SEE, Justice
(concurring specially).
This is a tragic case, which has been made more difficult by the judicial system’s failure at every level to find a way to *704 resolve it quickly.[1] I yearned and prayed that mediation[2] would provide a resolution that all parties would agree was in the best interest of Baby Boy G. That has not happened.
I have sworn to “faithfully and honestly discharge the duties of [my] office,” Art. XVT, § 279, Ala. Const.1901, to decide each case dispassionately, based on the rule of law, and “to apply the law with an eye to the future as well as with concern for the result in the particular case before us.” Brewer v. Williams, 430 U.S. 387, 415, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (Stevens, J., concurring); see also Canon 3.A.(1), Canons of Judicial Ethics. Therefore, although I fully understand that “[n]othing that [I] write, no matter how well reasoned or forcefully expressed,” 430 U.S. at 415, 97 S.Ct. 1232, can lessen the pain of all involved, I turn to the task of explaining my understanding of the law I am sworn before God and man to uphold,[3] as it applies to this case.
For the reasons explained below, I agree that the trial court erred by terminating C.V.’s parental rights as to Baby Boy G. and further erred by holding that C.V.’s consent to the adoption of Baby Boy G. either was implied or was not necessary.

Termination of Parental Rights

Baby Boy G. has been in the custody of the prospective adoptive parents since shortly after his birth; that fact alone, however, does not provide a sufficient basis for terminating C.V.’s parental rights.[4] Proceedings to terminate parental rights are purely statutory in Alabama, and there are only two statutory grounds for terminating parental rights: (1) “that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child,” or (2) “that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future.” Ala.Code 1975, § 26-18-7(a). The Legislature’s use of the present tense in setting forth the statutory grounds for terminating parental rights indicates that the inquiry in such a proceeding is whether one of those grounds exists at the time of the proceeding, not whether a ground may have existed at some point in the past.
*705 Although under the ore tenus rule this Court defers to a trial court’s judgment when the court’s findings of fact are based on evidence presented ore tenus, this Court must nevertheless reverse the trial court’s judgment when, as here, it is “clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” Odom v. Hull, 658 So.2d 442, 444 (Ala.1995). The trial court’s order does not expressly find the existence of one of the two statutory grounds for terminating a parent’s rights, and the evidence is insufficient to support a finding either that C.V. was, when the trial court terminated his parental rights, unable or unwilling to take on the responsibilities of fatherhood as to Baby Boy G. or that his conduct or condition rendered him unable to properly care for Baby Boy G.[5]
A presumption that the parents are “unable or unwilling to act as parents” arises when “the parents have abandoned a child as ... defined [in § 26-18-3(1)] and such abandonment continues for a period of six months next preceding the filing of the petition [to terminate the parents’ parental rights].” § 26-18-7(c). In this case, however, even if C.V.’s conduct before his son was born can be construed to be “abandonment” within the meaning of § 26-18-3(1), the presumption that he was unable or unwilling to raise his son did not arise. The prospective adoptive parents filed their petition to terminate the parental rights of Baby Boy G.’s birth parents on October 17, 1997. There was no evidence before the trial court that for six months preceding October 17,1997, C.V. had abandoned Baby Boy G.; therefore, no presumption could arise that C.V. was unable or unwilling to act as a parent.
Because there was no evidence to support a finding that, at the time the trial court terminated his parental rights, C.V. was unable or unwilling to take on the responsibilities of a father as to Baby Boy G., the trial court erred by terminating C.V.’s parental rights.

Implied Consent to Adoption

The trial court held that C.V.’s consent to the adoption of Baby Boy G. was implied from C.V.’s “conduct as it relates to the minor child and to the birth mother prior to and after the child’s birth.” See Ala.Code 1975, § 26-10A-9(2) (providing that a parent who abandons a child for six months impliedly consents to that child’s adoption). C.V. argues that his prebirth conduct toward the birth mother is irrelevant to the question whether he abandoned Baby Boy G. I disagree. It is clear that a parent can expressly consent to the adoption of his or her child before the child’s birth, see Ala.Code 1975, §§ 26-10A-ll(2), 26-10A-13(a) and (b). I see no reason a parent cannot also impliedly consent to a child’s adoption before that child’s birth. However, the Legislature has provided that, after the child’s birth, a parent can withdraw his express prebirth consent to the child’s adoption. See § 26-10A-13. If we are to recognize prebirth implied consent to adoption, then, I believe, consistent with the statutory structure for express consent and its withdrawal, we must also recognize implied withdrawal of prebirth consent.
A parent impliedly consents to an adoption by:
“(1) Leaving the adoptee without provision for his or her identification for a period of 30 days; or
*706 “(2) Knowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months; or
“(8) Receiving notification of the pen-dency of the adoption proceedings under Section 26-10A-17 and failing to answer or otherwise respond to the petition within 30 days.”
Ala.Code 1975, § 26-10A-9 (as it read before the amendment effective June 11, 1999) (emphasis added). The emphasized language is the only language that could be applicable in this case. Thus, the issue is whether C.V. failed to “maintain[ ] a significant parental relationship with [Baby Boy G.] for a period of six months.”
The trial court found that C.V. had “abused and abandoned [the birth mother] physically, emotionally, and financially, during her pregnancy with [Baby Boy GJ” by failing to provide her any financial support, by physically abusing her during her pregnancy, and by moving out of the apartment where they lived and taking almost everything with him, including the food, the dishes, the Christmas tree (C.V. moved during the holiday season), and all the furniture except a bed. Although C.V. vigorously disputes this recitation of the facts, the record contains sufficient evidence to support the trial court’s findings. Because C.V.’s conduct before the birth of Baby Boy G. was inconsistent with accepting the responsibilities of fatherhood, it could be construed to constitute implied consent to the adoption. However, the undisputed evidence shows that, since shortly after Baby Boy G.’s birth, C.V. has consistently and persistently sought custody of his son. A few days after the mother told C.V. that their child had been stillborn, C.V. asked for documentation to confirm that statement. When the mother could not provide documentation, C.V. checked with local hospitals and funeral homes. Less than two weeks later, he filed an action against the mother, seeking a declaration of his paternity and custody of his child. I would hold that, assuming C.V.’s prebirth conduct amounted to abandonment of Baby Boy G., C.V.’s actions after he learned of the birth of his son clearly indicate his intent to withdraw his implied consent to the adoption.
For these reasons, I concur in the main opinion. I also concur in the special writing of Chief Justice Moore.
MOORE, C.J., concurs.

. I understand that scores of letters by concerned citizens have been sent to me and to other members of this Court. However, as a Justice of this Court, I am prohibited from reading and considering such ex parte communications. Canon 3.A.(4), Canons of Judicial Ethics.

. On December 20, 2000, this Court ordered the parties to mediate their dispute and appointed retired Supreme Court Justice Mark Kennedy to act as the mediator.

. Upon entering the office of Associate Justice of this Court, I took the following oath, as required by the Alabama Constitution of 1901:
"I solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue a citizen thereof; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter, to the best of my ability. So help me God.”
Art. XVI, § 279, Ala. Const 1901.

.The fact that a child has been placed with unrelated persons for a long period does not alone give those custodians a permanent legal right to custody of that child, as if custody of a child could be acquired through some sort of "adverse possession.” See In re Wakefield, 365 Mo. 415, 425, 283 S.W.2d 467, 473 (1955) ("Their past custody of the child does not necessarily result in any enforceable future rights, for there is no doctrine of right by adverse possession in the custody of children.”); Ross v. Hoffman, 33 Md.App. 333, 343, 364 A.2d 596, 602 (1976) ("Children are not chattels, and doctrines such as adverse possession, however semantically regaled, do not apply to children.”).

. The trial court’s express findings of fact tend to support the opposite conclusion. The trial court noted in its findings that C.V. is now married, that he and his wife have a son, and that C.V. and his wife “appear to provide adequate parenting to their child.”